UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARELL CATLIN,

Plaintiff,

v.

UNKNOWN LONG, et al.,

Defendants.

Case No. 1:26-cv-891

Honorable Phillip J. Green

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

**I. Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Mailroom Personnel Unknown Long and Resident Unit Manager D. Bobay. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that in July 2025, he wrote a letter to the Wayne County Circuit Court requesting his daughter's birth certificate or the paternity test results from the paternity case regarding his daughter to give to LCF so that LCF would allow Plaintiff's daughter to visit him. (*Id.*, PageID.7–8.) Wayne County Circuit Court Judge Mary Beth Kelly responded to Plaintiff's letter and "sent Plaintiff the requested documents."[2] (*Id.*, PageID.8.) On August 8, 2025, Defendant Long "received the legal mail and rejected it the same day." (*Id.*) However, Plaintiff asserts that "Defendant Long did not send the notice of rejection to Plaintiff until October 20, 2025." (*Id.*) In the notice of mail rejection, Defendant Long indicated that the mail "was verified by Judge Kelly upon contact," but that the "original documents w[ere] not received from [an] approved source." (*Id.*) In the rejection, Plaintiff asserts Defendant Long "also referred to part of [Policy Directive] P.D. 05.03.118(KK), 'Prisoner Mail,' as additional information for the rejection." (*Id.*) The

[2] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

same day that Plaintiff received the notice, on October 20, 2025, he requested a hearing on the rejection. (*Id.*)

On October 28, 2025, Defendant Bobay held a hearing on the mail rejection. (*Id.*) Plaintiff asserts that Defendant Bobay "did an investigation by talking to [non-party] [] Inspector LaMontagne and Defendant Long." (*Id.*) Defendant Bobay confirmed by email that the mail was sent by Judge Kelly, "determined that the rejected mail be provided to Plaintiff by way of Special Handling Legal Mail Process," and ordered that the mail be returned to Plaintiff. (*Id.*, PageID.9.)

On November 4, 2025, Plaintiff submitted a grievance asserting that he still had not received the mail in question pursuant to Defendant Bobay's hearing decision. (*Id.*, PageID.9–10.) Plaintiff was instructed to re-write the grievance due to a mistake. (*Id.*, PageID.10.)

On November 6, 2025, Defendant Long issued a second notice of mail rejection of the same mail that she previously rejected on August 8, 2025. (*Id.*, PageID.9.) Plaintiff asserts this rejection was "contrary to [Defendant Bobay]'s October 28, 2025 decision that the mail had to be returned to Plaintiff." (*Id.*) On November 12, 2025, Plaintiff re-wrote the grievance he submitted on November 4, 2025, with the additional fact that he received a second mail rejection on November 6, 2025. (*Id.*, PageID.10.) Plaintiff's grievance asked that his legal mail be returned to him "immediately." (*Id.*) On November 18, 2025, Defendant Bobay held a hearing on the second mail rejection. (*Id.*, PageID.9.) Plaintiff asserts that Defendant Bobay's

"disposition in the second hearing was [to] 'turn over rejected mail to the inspector . . . to determine whether the mail contains contraband before it is destroyed.'" (*Id.*)

On November 17, 2025, Plaintiff received notice that his grievance was rejected because Plaintiff "failed to attempt to resolve with appropriate staff." (*Id.*, PageID.10.) Plaintiff filed a step II appeal for the grievance rejection, stating that he had attempted to resolve the issue with appropriate staff before filing the grievance, including Defendant Bobay and several non-parties. (*Id.*, PageID.10–11.) On December 8, 2025, "the warden responded to the step II appeal" and upheld the step I rejection. (*Id.*, PageID.11.) And on January 16, 2026, "the step III respondent upheld the step I and II responses." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated Plaintiff's First Amendment right to receive legal mail, and Plaintiff's Fourteenth Amendment due process rights. (*Id.*, PageID.12.) Plaintiff seeks declaratory relief, compensatory damages, and punitive damages. (*Id.*, PageID.13.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Discussion

### A. First Amendment Mail Claims

Plaintiff asserts that Defendants violated his right to receive legal mail when Defendant Long rejected Plaintiff's legal mail on two occasions and when Defendant

Bobay ordered that the mail be confiscated and destroyed. (Compl., ECF No. 1, PageID.12.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401, 412–13 (1989). And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974). The United States Court of Appeals for the Sixth Circuit considers mail sent from a court to be "legal mail." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003).

In this case, Plaintiff asserts that Defendant Long improperly rejected Plaintiff's legal mail, and Defendant Bobay improperly ordered the rejected mail to be confiscated and destroyed. (Compl., ECF No. 1, PageID.12.) Plaintiff contends

that he requested documents related to his daughter's paternity from the Wayne Circuit Court. (*Id.*, PageID.7–8.) Plaintiff received notice that his incoming legal mail from Wayne Circuit Court, supposedly containing the paternity documents that Plaintiff requested, had been rejected by Defendant Long. (*Id.*, PageID.8.) The rejection indicated that the mail had been "verified by Judge Kelly upon contact," but that the "original documents w[ere] not received from [an] approved source." (*Id.*) After the first hearing on the rejected mail, Defendant Bobay confirmed by email that the mail was sent by Judge Kelly, and "determined that the rejected mail be provided to Plaintiff by way of Special Handling Legal Mail Process." (*Id.*, PageID.9.) But Plaintiff later received a second notice that the same mail had been rejected again, contrary to Defendant Bobay's hearing decision. (*Id.*) Plaintiff asserts that Defendant Bobay then ordered the mail to be turned over "to the inspector . . . to determine whether the mail contains contraband before it is destroyed." (*Id.*, PageID.10.)

Although Plaintiff has by no means proven his claim, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's claim against Defendants Long and Bobay regarding the rejection and confiscation of Plaintiff's legal mail.

**B. Fourteenth Amendment Due Process Clause Claims**

Plaintiff also alleges that Defendants violated his right to due process when Defendant Long improperly rejected Plaintiff's mail, when Defendant Long delayed sending the notice of rejection to Plaintiff for over two months, when Defendant Long

improperly rejected the mail a second time, and when Defendant Bobay changed his previous decision to return Plaintiff's legal mail. (Compl., ECF No. 1, PageID.12.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Further, the elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin*, 803 F.2d at 243–44. The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

Here, the facts as alleged by Plaintiff show that Plaintiff received the process to which he was due. Plaintiff acknowledges that he received notices of the mail rejections for the mail in question. (Compl., ECF No. 1, PageID.PageID.8–9.) Additionally, Plaintiff requested hearings in response to both rejections and was provided with a hearing each time, where he had the opportunity to challenge the rejections. (*See id.*) MDOC Policy Directive 05.03.118 also allows for appeal of the decision by way of filing a grievance, MDOC Policy Directive 05.03.118 ¶¶ KKK, LLL (eff. May 5, 2025), and Plaintiff filed a grievance regarding the rejections, (*see* Compl., ECF No. 1, PageID.9–10).

Furthermore, to the extent that Plaintiff alleges that Defendants deprived him of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). A prisoner's failure to sustain this burden requires

dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his property.

Accordingly, for the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims will be properly dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's Fourteenth Amendment Due Process Clause claim against Defendants Long and Bobay will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment legal mail claims against Defendants Long and Bobay remain in the case.

An order consistent with this opinion will be entered.

Dated: September 18, 2026

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge